UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RUBEN E. MARTINEZ, #317530

        Petitioner,

v.                                         2:07CV37

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

### I.  STATEMENT OF THE CASE

#### A.  Background

On December 10, 2002, in the Circuit Court for the City of Hampton, Virginia, petitioner was convicted of first-degree murder, aggravated maiming, and unlawful use of a firearm. Petitioner was sentenced to life, plus fifty-eight years imprisonment.

Petitioner appealed his convictions to the Virginia Court of Appeals, which upheld the convictions on December 23, 2003. Petitioner appealed in the Supreme Court of Virginia, but on April 22, 2004, the appeal was refused.

On April 8, 2005, petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. The petition was written in Spanish but was translated for purposes of review. On October 12, 2006, the petition was dismissed.

On January 16, 2007, petitioner filed a petition for a writ of habeas corpus in this Court on January 10, 2007, and on April 2, 2007,

respondent filed a motion to dismiss and Rule 5 answer.  This matter is now ripe for consideration.

### B.  Grounds Alleged

Petitioner alleges the following grounds:[1]

1.    Petitioner's rights under <u>Miranda v. Arizona</u>, 384 U.S. 46, have been violated;

2.    A police report describing the transport of one of the victim's bodies contains inconsistent dates;

3.    The Commonwealth's witnesses gave inconsistent accounts of the events which led to petitioner's convictions;

4.    The police failed to properly collect evidence and fingerprints and performed a poor investigation of the crime scene;

5.    Ineffective assistance of counsel and trial court error for failing to secure a stenographer for the preliminary hearing;

6.    The trial court wrongly convicted and sentenced petitioner and the Commonwealth attorney manipulated the case because petitioner was an immigrant;

7.    Petitioner's constitutional protection against double jeopardy was violated when the jury was instructed on four charges and subsequently returned with five convictions;

8.    The trial court improperly allowed the case to proceed even though there was no DNA evidence, no gunpowder residue, no weapon, and no expert testimony concerning these issues;

9.    The trial court and the Commonwealth Attorney discriminated against petitioner by striking the only African-American on the jury;

10.   The Commonwealth's attorney discriminated against petitioner by refusing to provide the evidence against petitioner, despite his motion for discovery;

11.   The trial court improperly sentenced petitioner for having a weapon when there was no proof that he had a weapon;

---

[1] The Court has attempted to interpret petitioner's claims as best it can from the petition and from the motion to dismiss, which was taken verbatim from the state petition.  Even though the wording of the claims is different and has been considerably compacted, the Court feels it has sufficiently stated the grounds petitioner wishes to raise.

12. The trial court erred by failing to grant petitioner's motion for a mistrial on the grounds that his investigator failed to sufficiently assist him;

13. The trial court erred by failing to pay attention to the fact that petitioner was arrested without the execution of an arrest warrant;

14. The trial court violated petitioner's rights by failing to provided an interpreter during the proceedings;

15. The Commonwealth's Attorney erred by accusing petitioner of throwing the weapon away when there is no proof that he had a weapon;

16. The Commonwealth's Attorney erred by accusing petitioner of shooting a surviving victim;

17. the Commonwealth's Attorney and the police both lied when they denied not knowing petitioner's nationality or that he spoke Spanish;

18. The trial court erred by only calling expert witnesses from the Commonwealth's side and not on petitioner's behalf;

19. The trial court erred by not calling a gun expert to testify;

20. The trial court erred by not calling a doctor to testify regarding the surviving victim's condition, potentially for mitigation purposes on the aggravated maiming charge;

21. The trial court erred by not calling experts to provide testimony concerning drugs that were recovered from the scene;

22. Oscar Webb, a witness who testified that he saw petitioner leaving the victims' house after hearing gunshots, had also seen a white male leaving the house last, but no one was concerned about this;

23. Petitioner was erroneously convicted of possession of a firearm twice, when one of the charges was <u>nolle prossed</u>;

24. Ineffective assistance of counsel "in everything";

25. Petitioner did not understand the court;

26. "[M]any infractions were made on the [p]olice and Commonwealth," referring to the errors in the trial transcripts and police reports;

27. The trial court erred in denying petitioner's motion for new counsel;

28. The Commonwealth Attorney committed misconduct in leading all of his witnesses;

29. Ineffective assistance of counsel for failure to call "Larry," "Angela Wales," "J.J.," and "Victoria" to testify on petitioner's behalf and regarding the "tatoos that "Gretchen possesses on her body";

30. Ineffective assistance of counsel for failure to object to photographs that were introduced into evidence;

31. Ineffective assistance of counsel for failure to object to statements by witnesses that appear to contradict each other;

32. The trial court erred by not verifying the inconsistent statements of two eyewitnesses to determine which one was being truthful;

33. A neighbor had a different account of who first left the victim's house, and that this account was more favorable to petitioner, but no notice was given;

34. Insufficient evidence to support petitioner's convictions;

35. Ineffective assistance of counsel for failure to keep petitioner advised of what he was doing, such as getting continuances without petitioner's knowledge, not writing to petitioner, and not accepting petitioner's phone calls;

36. Petitioner's constitutional rights were violated when the police did not translate his <u>Miranda</u> rights;

37. Insufficient evidence to support a conviction of possession of a firearm;

38. Petitioner's due process rights were violated when the police incorrectly cited the date on which they transported a body and stated that petitioner could understand what they said in English;

39. The trial court erred by not providing a translator, which was misleading, and all of the experts testified on behalf of the Commonwealth and none on petitioner's behalf;

40. Petitioner's constitutional rights were violated "in all aspects";

41. Petitioner's constitutional rights and international law have been violated, by being denied a translator;

42. Petitioner's constitutional rights were violated when the police failed to advise him of his right to counsel pursuant to <u>Miranda</u>; and

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993).  The courts must construe the complaint liberally in favor of the plaintiffs, even if recovery appears remote and unlikely.  In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference.  See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### B.  Standard of Review for State Court Findings

The federal statute regarding review of state court habeas corpus actions provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d)(2000).

This standard, adopted by the Antiterrorism and Effective
Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, is consistent with
the Fourth Circuit's interpretation of 28 U.S.C. § 2254(d) prior to the
passage of the new law.  In Fields v. Murray, 49 F.3d 1024 (4th Cir.
1995), the court held that a review of a state court finding, which is
entitled to a presumption of correctness, compels the habeas court to
accord a high measure of deference to the state court.  See id. at 1032-
33 (citing Rushen v. Spain, 464 U.S. 114, 120 (1983); Sumner v. Mata, 455
U.S. 591, 598 (1982)).  As stated in Marshall v. Lonberger, 459 U.S. 422
(1983), "[t]his deference requires that a federal habeas court more than
simply disagree with the state court before rejecting its factual
determinations.  Instead, it must conclude that the state court's
findings lacked even 'fair [] support' in the record." Id. at 432.


## C.  Petitioner's Claims are Exhausted and
## are Subject to Federal Review.

The exhaustion requirement dictates that a petitioner must
first present his claims for relief to state courts before a petition for
habeas corpus may be granted by the federal courts.

(b)(1)  An application for a writ of habeas
corpus on behalf of a person in custody pursuant to
the judgment of a State court shall not be granted
unless it appears that--

(A)   the applicant has exhausted the remedies
available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)-(c)(2000).

A claim raised in a federal petition for writ of habeas corpus must be the same claim as that presented in state proceedings.  See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Pitchess v. Davis, 421 U.S. 482, 487 (1975); Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999); Beck v. Angelone, 113 F. Supp.2d 941, 960-61 (E.D. Va. 2000); see also  Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513 U.S. 364, 365 (1995); Satcher v. Pruett, 126 F.3d 561, 573 (4th Cir. 1997).  Respondent concedes, and the Court agrees, that for purposes of federal review, petitioner's claims are exhausted.

**C.  The Petition is not Barred by the Statute of Limitations**.

Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA), and it was enacted on April 24, 1996, when signed by President Clinton.  With the passage of the AEDPA, several modifications were made to habeas corpus law.  Before the passage of the AEDPA, a prisoner could file a habeas corpus petition at any time.  See Brown v. Angelone, 150 F.3d 370, 371 (4th Cir. 1998).  However, the AEDPA created a statute of limitation for habeas corpus petitions.  See 28 U.S.C. § 2244(d)(1)(2000); Brown, 150 F.3d at 375.  The AEDPA provides that any

person in custody pursuant to a state court judgment has a one-year period of limitation for the filing of a writ of habeas corpus.  The period of limitation runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(1994).  The time during which state post-conviction or other collateral review is pending is not counted toward this period of limitation.  See id. § 2244(d)(2).

In this case, petitioner's conviction became final On July 21, 2004, when his time for filing a writ of certiorari in the Supreme Court of Virginia expired.[2]  On April 5, 2005, petitioner tolled the federal statute of limitations by filing a habeas petition in the Supreme Court of Virginia.  At that point, 258 days had elapsed from the time his convictions became final in state court.  On October 12, 2005,[3] the

_____

[2]  A state prisoner's conviction becomes final ninety days after the highest state court hands down its opinion, which begins the period for filing a petition for writ of certiorari in the United States Supreme Court or on the date that certiorari is denied by the Supreme Court.  See Harris v. Hutchinson, 209 F.3d 325, 238 (4th Cir. 2000).

[3]  Respondent incorrectly states that the Supreme Court of Virginia dismissed the petition on August 28, 2006.  If this date was correct, petitioner would have had until December 13, 2007, to file the petition.  However, the date is incorrect, and the instant was petition was timely filed.

federal statute of limitations began to run with the dismissal of the state habeas petition, and petitioner then had 107 days, or until January 27, 2006, to file a habeas petition in federal court.  On January 10, 2007, petitioner filed the instant petition when he delivered the petition to the mail room at Wallens Ridge State Prison for mailing. Accordingly, the petition was timely filed.

### E.  Procedural Default

Under Virginia law, a claim included in a petition for habeas corpus will be barred if an objection was not raised at trial and the objection presented on direct appeal.  In <u>Coppola v. Warden of Virginia State Penitentiary</u>, 282 S.E.2d 10 (Va. 1981), the Supreme Court of Virginia held that to preserve an issue for appeal and for a habeas corpus proceeding, the issue must be timely objected to at trial.  Rule 5:25 of the Supreme Court of Virginia states the contemporaneous objection rule:

> Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling . . . .

Va. S. Ct. R. 5:25.

The Supreme Court has stated that: "Under Virginia law, failure to raise a claim on direct appeal from a criminal conviction ordinarily bars consideration of that claim in any subsequent state proceeding."  <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986).  The Fourth Circuit has held that if a claim is procedurally barred in Virginia courts because it was not brought on direct appeal, it will also be barred in the federal system.  <u>Bassette v. Thompson</u>, 915 F.2d 932 (4th

Cir. 1990).[4]   In <u>Whitley v. Bair</u>, 802 F.2d 1487 (4th Cir. 1986), the court held that the failure of an inmate to directly appeal his conviction to the Supreme Court deprives

> the Virginia Supreme Court of the opportunity to rule on the merits of his claims.  We consider such failure to constitute a violation of the requirements of Rule 5:21, which applies to appeals of all Virginia cases, civil or criminal, and conclude that such violation constitutes a procedural default sufficient to preclude federal court review of the merits . . . .

<u>Id.</u> at 1502 (<u>citing</u> Va. S.Ct. R. 5:21, <u>repealed and reinstated in substantially similar form as</u>, Va. S.Ct. R. 5:17, 5:25).  In <u>Slayton v. Parrigan</u>, 205 S.E.2d 680, 682 (Va. 1974), the Supreme Court of Virginia stated a similar proposition:  "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error."  The Supreme Court of the United States recently addressed the same issue in <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).   The Court held that the doctrine of procedural default will bar a federal habeas petition when a prisoner fails to meet a state procedural requirement.   <u>Id.</u> at 750.  Speaking for the Court, Justice O'Connor said:

> We now make it explicit:  In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. . . . We now recognize the important interest in finality served by state procedural rules, and the significant harm to the

---

[4]   The court in <u>Bassette</u> relied on section 8.01-654(B)(2) of the Virginia Code.  <u>Bassette</u>, 915 F.2d at 936.  Section 654 (B)(2) states: "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654 (B)(2)(Michie 1992).

States that results from the failure of federal
courts to respect them.

<u>Id.</u> at 750.

Moreover, the federal court is required to dismiss a procedurally defaulted claim absent a showing of justifiable cause resulting in actual prejudice. <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977). Petitioner has not made a showing of justifiable cause for his failure to appeal the aforementioned issues to the Court of Appeals and the Supreme Court of Virginia. Therefore, the issue of actual prejudice need not be addressed.

**1.   <u>Claims 1-4, 6-8, 10-12, 14-23, 26-28, 32-33, 38-39, 41-42 are procedurally defaulted</u>.**

Petitioner claims that his constitutional rights were violated because:

1.   his rights under <u>Miranda v. Arizona</u>, 384 U.S. 46, have been violated, (Claim 1);

2.   a police report describing the transport of one of the victim's bodies contains inconsistent dates, (Claim 2);

3.   the Commonwealth's witnesses gave inconsistent accounts of the events which led to petitioner's convictions, (Claim 3);

4.   the police failed to properly collect evidence and fingerprints and performed a poor investigation of the crime scene, (Claim 4);

5.   the trial court wrongly sentenced petitioner and the Commonwealth attorney manipulated the case because petitioner was an immigrant, (Claim 6);

6.   petitioner's constitutional protection against double jeopardy was violated when the jury was instructed on four charges and subsequently returned with five convictions, (Claim 7);

7.   the judge improperly allowed the case to proceed even though there was no DNA evidence, no gunpowder residue, no weapon, and no expert testimony concerning these issues, (Claim 8);

8.   the Commonwealth's attorney discriminated against petitioner by refusing to provide the evidence against

petitioner, despite his motion for discovery, (Claim 10);

9.    the trial court improperly sentenced petitioner for having a weapon when there was no proof that he had a weapon, (Claim 11);

10.   the trial court erred by failing to grant petitioner's motion for a mistrial on the grounds that his investigator failed to sufficiently assist him, (Claim 12);

11.   the trial court violated petitioner's rights by failing to provided an interpreter during the proceedings, (Claim 14);

12.   the Commonwealth's Attorney erred by accusing petitioner of throwing the weapon away when there is no proof that he had a weapon, (Claim 15);

13.   the Commonwealth's Attorney erred by accusing petitioner of shooting a surviving victim, (Claim 16);

14.   the Commonwealth's Attorney and the police both lied by denying that they did not know petitioner's nationality or that he spoke Spanish, (Claim 17);

15.   the trial court erred by only calling expert witnesses from the Commonwealth's side and not on petitioner's behalf, (Claim 18);

16.   the trial court erred by not calling a gun expert to testify, (Claim 19);

17.   the trial court erred by not calling a doctor to testify regarding the surviving victim's condition, potentially for mitigation purposes on the aggravated maiming charge, (Claim 20);

18.   the trial court erred by not calling experts to provide testimony concerning drugs that were recovered from the scene, (Claim 21);

19.   Oscar Webb, a witness who testified that he saw petitioner leaving the victims' house after hearing gunshots, had also seen a white male leaving the house last, but no one was concerned about this, (Claim 22);

20.   petitioner was erroneously convicted of possession of a firearm twice, when one of the charges was nolle prossed, (Claim 23);

21.   "many infractions were committed by the police and the commonwealth," referring to the errors in the trial transcripts and police reports, (Claim 26);

22.   the trial court erred in denying petitioner's motion for new counsel, (Claim 27);

23. the Commonwealth Attorney committed misconduct in leading all of his witnesses, (Claim 28);

24. the trial court erred by not verifying the inconsistent statements of two eyewitnesses to determine which one was being truthful, (Claim 32);

25. a neighbor had a different account of who first left the victim's house, and that this account was more favorable to petitioner, but no notice was given, (Claim 33);

26. petitioner was denied Constitutional rights because his <u>Miranda</u> rights were not translated, (Claim 36);

27. petitioner's due process rights were violated when the police incorrectly cited the date on which they transported a body and stated that petitioner could understand what they said in English, (Claim 38);

28. the trial court erred by not providing a translator, which was misleading, and all of the experts testified on behalf of the Commonwealth and none on petitioner's behalf, (Claim 39);

29. petitioner's constitutional rights were violated "in all aspects," (Claim 40);

30. petitioner's constitutional rights and international law have been violated, by being denied a translator, (Claim 41);

31. petitioner constitutional rights were violated when the police failed to advise him of his right to counsel pursuant to <u>Miranda</u>, (Claim 42); and

The Supreme Court of Virginia addressed all of the above claims and determined that the claims could have been raised at trial or on direct appeal. The record indicates that petitioner appealed his case twice, and in each petition, he raised the following grounds: (1) violation of rights under the Vienna Convention on Consular relations, (2) trial error in rejecting petitioner's <u>Batson</u> challenge to the Commonwealth's strike of the only African-American male on the jury, (3) trial court error by failing to reduce the first degree murder charge to voluntary manslaughter, and (4) trial court error in failing to reduce the aggravated malicious wounding charge to ordinary malicious wounding. <u>Martinez v. Virginia</u>, 590 S.E.2d 57, 59 (Va. 2003). Petitioner had ample opportunity to raise the claims on appeal, but he chose not to do so and

has not provided any explanation which would overcome the bar presented in <u>Slayton</u>.  The claims are procedurally defaulted and should be DISMISSED.

### 2.  **Claims 13 and 24-25 are Procedurally Defaulted**.

#### a.  <u>Claim 13</u>

Petitioner alleges that he was arrested without the execution of an arrest warrant and that the court did not pay attention to this fact, (Claim 13).  This is a departure from petitioner's parallel claim in his state petition (Claim 14), which does not mention the presence of an arrest warrant.  Furthermore, the claim does not clearly state that petitioner was arrested without a warrant or that such an arrest was unlawful.  Therefore, petitioner introduces information which has not previously been heard by the state court.  Petitioner ignores the long-standing precedent that a petition for habeas corpus in federal court cannot raise facts that were not presented to the state court, unless he can demonstrate that failure to entertain the new information would result in a fundamental miscarriage of justice.  <u>Keeney v. Tamayo Reyes</u>, 504 U.S. 1, 11 (1992).  The claim is procedurally defaulted and should be DISMISSED.

#### c.  <u>Claim 24</u>

Petitioner alleges that he received ineffective assistance of counsel "in everything" but fails to explain counsel's deficiency.  The claim corresponds to Claims 44 and 45 of the state petition, the contents of which attack the inconsistent testimony of two of the Commonwealth's witnesses.  The  Supreme Court of Virginia found the claim to be procedurally defaulted pursuant to  <u>Slayton</u>. ( <u>Martinez v. Director</u>, Record No. 050742, Va. S.Ct. Ord. at 7.)  As raised in the state habeas petition, the claim does not allege ineffective assistance of counsel, nor any other logical reason to interpret the claim as such. Therefore,

in alleging ineffective assistance of counsel, petitioner has changed the facts to such an extent that were the Court to address it on the merits, it would in essence address an unexhausted claim.  However, were petitioner to return to the state court with the claim at this point, it would be barred under section 8.01-654(A)(2), of the Virginia Code, for being beyond the statute of limitations.  The claim is procedurally defaulted and should be DISMISSED.


c.  <u>Claim 25</u>

Petitioner alleges that he did not understand the court proceedings and left those matters to others, to his detriment, (Claim 25).  In the state habeas petition, petitioner stated, "[f]or many other things to present before the court the [sic] because I do not understand them I leave this in the hand[s] of the court attorney." (St. Hab. Pet. at 9.)  The Supreme Court of Virginia addressed the claim from the perspective that petitioner had other claims but did not understand them, so he would leave the claims in the hands of the court attorney.  The Supreme Court did not construe the claim to mean that petitioner could not understand the court itself.  While petitioner may be trying to clarify the ambiguous language of his state claim, the new language changes the meaning of the claim entirely and bars this Court from addressing the claim since it is unexhausted.  However, if petitioner attempted to raise the claim before the Supreme Court of Virginia at this time, he would be barred pursuant to sections 8.01-654(A)(2) and (B)(2), of the Virginia Code, for being beyond the statute of limitations and for raising issues that should have been presented in the original petition. It should be noted that even though petitioner has a language barrier, this would not present a fundamental miscarriage of justice, since the

allegation was not raised during trial or on appeal.  Therefore, the Supreme Court of Virginia would, in all likelihood, have found the claim to be procedurally defaulted, even if the court had interpreted the claim in the same manner as petitioner presents it to this Court.  The claim is procedurally defaulted and should be DISMISSED.

### F.  Petitioner did not receive ineffective assistance of counsel.

The standards upon which claims of ineffective assistance of counsel are to be judged are relatively clear.  They were established in Strickland v. Washington, 466 U.S. 668 (1984), and have been applied on numerous occasions by this Court.  In Strickland, the Supreme Court approved as the proper standard for attorney performance that of "reasonably effective assistance."  Id. at 687.  The Court stated:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 686-87.

There are, therefore, two elements of the Strickland test, each of which must be met before the conduct of counsel can be found constitutionally defective.  First, petitioner must show that he received deficient legal representation, measuring the competency of his counsel against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation."  Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).  Petitioner must also show actual prejudice; that is, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'"  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494 (1986); Poyner v. Murray, 964 F.2d 1404, 1425 (4th Cir. 1992)).

The burden on petitioner is to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  That translates into a reasonable probability that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

In analyzing trial counsel's performance under the "deficiency" prong of Strickland, a reviewing court is required to be highly deferential in scrutinizing counsel's tactics.  See Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996).  Further, reviewing courts are admonished to "not permit the benefit of hindsight to impact . . . review."  Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995)(citing Strickland, 466 U.S. at 689).

### 1.  **Claim 5 is without merit**.

Petitioner alleges that counsel was ineffective for failing to ensure that a stenographer was present during the preliminary hearing.

The Supreme Court of Virginia held that counsel's failure to have a stenographer present at petitioner's preliminary hearing does not fail the performance prong of <u>Strickland</u>.  (<u>Martinez v. Director</u>, Record No. 050742, Va. S.Ct. Ord. at 8.)  Petitioner has not provided anything more than conclusory statements to support a contention that such an action on the counsel's part would render him ineffective.  Additionally, petitioner has provided neither supporting evidence nor a persuasive argument as to why the failure to transcribe a preliminary hearing would effect the outcome of his case, given that the evidence was sufficient to find him guilty beyond a reasonable doubt. The Court agrees with the Supreme Court of Virginia and finds that petitioner has not met the prejudice prong.  The claim is without merit and should be DISMISSED.

### 2.  <u>Claim 29 is without merit</u>.

Petitioner alleges that counsel was ineffective for failing to call witnesses that could testify in his behalf.  Petitioner alleges that one of the witnesses, "Angela," could have testified that she was present at the time of the shootings but heard nothing, which was inconsistent with the testimony of other witnesses.  The second witness was "Larry," who could have testified that petitioner had an intimate relationship with "Gretchen," who had denied the relationship.  As the Supreme Court of Virginia pointed out, petitioner cannot be certain of what the witnesses' testimonies would have been.  The witnesses have signed no sworn affidavits, nor is there anything in the record to indicate that they were willing to come forward to testify on behalf of petitioner.  Furthermore, counsel enjoys deference to tactical decisions. <u>Strickland</u>, 466 U.S. at 681.  The record indicates that petitioner's counsel questioned the credibility of the Commonwealth's witnesses. (  Tr. at 100.)  Petitioner's counsel need not pursue every avenue available to him and, therefore, has not failed the performance prong of <u>Strickland</u>.

In addition, the merits of pursuing such strategy are dubious at best.  Even if Angela testified on petitioner's behalf, there was nothing to prevent her from being impeached on cross examination, and there is no reason to believe that a jury would find her more convincing than the other witnesses.  Likewise, petitioner fails to provide any explanation as to why Larry's testimony would do anything to alter the conclusion that petitioner shot two people and killed one of them.  Furthermore, petitioner wanted to prove through these witnesses that he had an intimate relationship with Gretchen.  If petitioner's relationship with Gretchen had been established, it could possibly have been used to diminish Gretchen's credibility.  However, Gretchen was only one of multiple witnesses, and it is unlikely that her diminished credibility would have had an impact on the outcome.  In any case, petitioner has done nothing to demonstrate how the information would have affected the outcome.  The Court finds that counsel's performance did not meet the prong of <u>Strickland</u> and, thus, was not ineffective.  The claim is without merit and should be DISMISSED.

### 3.  **Claim 30 is without merit**.

Petitioner alleges that counsel was ineffective for failing to object to photographs that were introduced into evidence.  Petitioner argues that the photographs did not prove that he committed the crimes.  The record indicates that there were ten photographs submitted into evidence during the trial and that petitioner's counsel did not object to any of them.  (9/25/02 Tr. at 218, 227, 245, 250, 300, 323.) Under Virginia law, deference is given to the trial court's determination on the admissibility of photographic evidence.  <u>Bailey v. Commonwealth</u>, 529 S.E.2d 570, 579 (Va. 2000).  Admission of photographs, including graphic photographs depicting death or serious injury, are admissible as long as they are relevant and accurately portray the crime scene and condition

of victims and will be taken as authentic if their identity is confirmed by a witness.  Id.  The record also indicates that the photographs were introduced to paint a picture of the crime scene and the resulting injuries, both of which are confirmed by witnesses.  (9/25/02 Tr. at 215-18, 226, 249-50.)  An objection by petitioner's counsel would have been overruled.  Failure to object in such circumstances is not deficient performance under Strickland.  Petitioner provides no explanation of why counsel's failure to make such an objection was either deficient performance or prejudicial, and he has not indicated which photos he believes are objectionable or what objections should have been made.  The only thing petitioner offers is a conclusory statement of his opinion.  Weighed against the overwhelming volume of facts to the contrary, petitioner's conclusory opinion establishes neither deficient performance nor prejudice. The claim is without merit and should be DISMISSED.

### 4.  __Claim 31 is without merit__.

Petitioner alleges that counsel was ineffective for failing to object to statements by witnesses that appear to contradict each other.  As the Supreme Court of Virginia pointed out, the claim is factually without merit.  The record reveals that counsel's entire defense was based primarily on the inconsistent testimony of the witnesses in an attempt to make them appear so incredible that they would find petitioner not guilty.  Petitioner particularly alleges that the statements of Gretchen and "J.J." were totally ignored by counsel.  However, in closing argument, counsel discussed the inconsistencies between the two statements.  (9/26/02, Tr. at 78-79.)  Just because the outcome did not turn out in petitioner's favor, does not necessarily make his counsel's assistance ineffective, and it certainly does not give petitioner the right to fabricate claims.  The claim is without merit and should be DISMISSED.

### 5.   **Claim 35 is without merit**.

Petitioner alleges that counsel was ineffective for failing to keep petitioner advised of what he was doing with regard to the defense of the case, such as (1) obtaining continuances without petitioner's knowledge, (2) not writing to petitioner, and (3) not accepting petitioner's collect phone calls.  The   Supreme Court of Virginia dismissed the claim, finding that since petitioner failed to explain how counsel's failure to inform him of a continuance was deficient, or how it would have affected the outcome of his case, counsel was not ineffective.  (_Martinez v. Director_, Rec. No. 050742, Va. S.Ct. Ord. at 11.)  This Court agrees.

Regarding counsel's failure to write to petitioner or accept his collect phone calls, petitioner offers nothing but a conclusory statement that the actions constitute ineffective assistance.  He does not explain what information he was seeking to relay to counsel to assist in his defense, nor does he explain how counsel's failure to write or accept his phone calls would have affected the outcome of his trial.  The record reflects the full scope of both petitioner's and counsel's knowledge of the case, and it is clear from the record that counsel was well-prepared for trial.  The claim is without merit and should be DISMISSED.

### 6.   **Claim 40 is without merit**.

Petitioner very broadly alleges that "in everything" he received ineffective assistance of counsel.  Petitioner alleges that counsel allowed the Commonwealth's Attorney to change witness statements and that he failed to object to the Commonwealth's failure to serve petitioner with "arrest orders."  There is no proof that the Commonwealth acted in any malicious way to change the statements of the witnesses.  To the contrary, the record indicates that many key witnesses gave

inconsistent testimonies, something which petitioner's counsel capitalized on during trial. Since the record contradicts petitioner's claim, counsel's actions do not amount to ineffective assistance. The record further indicates that petitioner was made well aware of the charges brought against him on no less than four occasions: at his extradition hearing on September 21, 2001; during court appearances on February 15 and May 2, 2002; and at his arraignment on July 11, 2002. Counsel's failure to object to the Commonwealth not notifying petitioner of the charges against him would have done nothing except repeat information already known, and does not meet the deficient performance test under Strickland. Further, petitioner has not explained why this failure would have altered the outcome of his case, and therefore, the prejudice prong of Strickland has not been met. The claim is without merit and should be DISMISSED.

Petitioner's blanket claim is that "in everything . . . there is ineffective assistance of counsel." The claim is far too broad to have any merit. Federal courts assess claims of ineffective assistance individually, as opposed to cumulatively. Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). When a petitioner provides specific allegations of ineffective assistance of counsel which have been reviewed and rejected, there is no support for the conjecture that the individual acts, when taken cumulatively, amount to deficient performance or prejudice. Lenz v. Warden of Sussex I State Prison, 593 S.E.2d 292, 305 (Va. 2004). Petitioner has made specific allegations of ineffective assistance, all of which have been considered and rejected. His broad claim does not persuade the Court to search the record for additional instances of professional misconduct beyond what has already been alleged. Consequently, the claim has satisfied neither the performance nor the prejudice prong of Strickland and should be DISMISSED.

### 7. **Claim 9 is without merit**.

Petitioner alleges that the trial court erred in using a peremptory strike to remove the only African-American male from the jury, (Claim 9).  During trial, petitioner submitted a motion to challenge the peremptory strike pursuant to Batson v. Kentucky, 476 U.S. 79 (1986).  The trial court denied the motion on the grounds that the Commonwealth had demonstrated that the strike was race-neutral.  Martinez, 590 S.E.2d at 61.  On appeal, the Virginia Court of Appeals affirmed the trial court, pointing out that the juror in question had been convicted of multiple felonies, giving the Commonwealth's Attorney valid concern regarding the juror's attitude toward law enforcement and, therefore, the strike would not be pretextual.  Id. at 62.  The Supreme Court of Virginia affirmed the decision.  Nonetheless, petitioner raised the issue in his habeas petition in the Supreme Court of Virginia, and the court found that the claim was barred because Virginia law forbids a habeas petition from raising claims that have already been decided against a petitioner during trial and on direct appeal.  Henry v. Warden, 576 S.E.2d 495, 496 (2003).

Typically, such a claim would be noncognizable before a federal court.  However, a federal court can hear a claim that has already been decided by a state court on direct appeal if the petitioner alleges that a constitutional violation has taken place.  See Wainwright v. Goode, 464 U.S. 78, 83 (1983);  Ramdass v. Angelone, 530 U.S. 156 (2000).  While petitioner has not expressly alleged that the discrimination is of a constitutional scope, the fact that he challenged the strike under Batson at trial and raised the issue in two direct appeals indicates that he believes his constitutional rights were violated.

However, this Court refuses to disturb the decision of the Virginia courts.  When subjected to a challenge, a prosecutor has a burden to explain why his strike of a juror is race neutral.  <u>Batson</u>, 476 U.S. at 96-97.  The trial court must then determine if the explanation is sufficient, and its finding will only be overturned on appeal if the decision is clearly erroneous.  <u>Hernandez v. New York</u>, 500 U.S. 352, 368-69 (1991).  In the present case, the trial court allowed the strike because the juror had been convicted of multiple felonies, and the prosecutor felt the convictions would cause the juror to have a strong bias against law enforcement.  The strike had nothing to do with the juror's race.  Federal courts have ruled that a juror's potential attitude regarding past experiences is sufficiently race-neutral to allow a peremptory strike.  <u>Richards v. Relentless, Inc.</u>, 341 F.3d 35, 45 (1st Cir. 2003).  In the instant case, the Commonwealth's concern goes beyond mere speculation that a convicted felon would harbor at least some negative bias against the state that put him in prison and that the bias would affect his ability to serve on a jury.  The trial judge did not err in finding the explanation valid and race-neutral.  The claim is without merit and should be DISMISSED.

### G.  The Evidence at Trial Was Sufficient to Support a Conviction.

The standard of review in a habeas corpus proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).  In <u>Wright v. West</u>, 505 U.S. 277 (1992), the Supreme Court held that:

> In <u>Jackson</u>, we emphasized repeatedly the defer-
> ence owed to the trier of fact and, correspond-

ingly, the sharply limited nature of constitutional
sufficiency review.  We said that "all of the
evidence is to be considered in the light most
favorable to the prosecution," that the prosecution
need not affirmatively "rule out every hypothesis
except that of guilt," and that a reviewing court
"faced with a record of historical facts that
supports conflicting inferences must presume--even
if it does not affirmatively appear in the record--
that the trier of fact resolved any such conflicts
in favor of the prosecution, and must defer to that
resolution."

Id. at 207-97 (citations omitted).  In the present case the Court has

fully reviewed the trial transcripts and has determined that the

evidence, when viewed in the light most favorable to the prosecution, was

sufficient to convict petitioner.

### 1. **Claims 34 and 37 are without merit**.

Petitioner alleges that the evidence was insufficient to

support his convictions, (Claims 34 and 37).  Petitioner bases the claims

on the fact that the police did not collect fingerprints or DNA evidence

during their investigation and that witnesses gave conflicting

testimonies.


a. <u>The police did not collet fingerprints or DNA evidence</u>.

The burden was on the Commonwealth to prove beyond a

reasonable doubt each element of the crimes that petitioner was charged

with.  The record clearly establishes petitioner's guilt.  On appeal,

petitioner argued that he shot the victim but did so without

premeditation and that he shot another victim, but she was not

permanently disabled.  Martinez, 590 S.E.2d at 63, 64.  Petitioner

admitted that he shot two victims and that one died and the other was

injured.  By this admission, petitioner has conceded that he had in his

possession a gun and fired it. The Virginia Court of Appeals found that

the evidence was sufficient to prove the malice aforethought required for a first-degree murder conviction and the permanent disability of the second victim, which established the charge of aggravated maiming.  Id. at 65.  The grounds that petitioner now asserts point to inconsistencies in proving that he either possessed or fired a gun, or that he was present at the time of the shooting.  Petitioner admitted in both the Virginia Court of Appeals and the Supreme Court of Virginia that he did, in fact, fire the weapon at his victims.  Petitioner cannot now try to assert that he was innocent of the crimes or that the trial court was unable to prove them. The claim is without merit and should be DISMISSED.

b.  The conflicting testimony of the witnesses

A court will not substitute its judgment for the trier of fact but, rather, will consider the evidence in the light most favorable to the prosecution and will only overturn the decision if any rational trier of fact could not have found that a crime was committed beyond a reasonable doubt.  Jackson at 319.  Since the Court is reviewing    de novo the evidence the jury considered in reaching its verdict, it is bound to abide by the decision of the United States Supreme Court.  When petitioner was on trial, the Commonwealth called at least three witnesses who were present when the crimes occurred, including one of the victims, Victoria McGillis.  McGillis testified that before being shot by petitioner, she saw him within seconds after he shot the first victim.  (9/25/02 Tr. at 141, 175.)  There was also testimony from a neighbor who heard a gunshot and saw petitioner run out of the house with a gun in his hand.  (9/25/02 Tr. at 271.)  Finally, there were expert witnesses that discussed the crime scene and the conditions of the victims.  Petitioner's counsel cross-examined all but two of the witnesses and made an attempt to attack the credibility of their testimony.  The credibility of witnesses and the weight to be drawn from their testimony are matters within the exclusive

province of the factfinder.  <u>Long v. Commonwealth</u>, 379 S.E.2d 473, 476 (Va. 1989).  In this case, the factfinders weighed the evidence provided by the Commonwealth against the weaknesses in the credibility of the witnesses and delivered a verdict of guilty on all counts.  The Supreme Court of Virginia did not disrupt the verdict, and this Court finds no reason to do so either.  While the evidence may have been more complete, a rational trier-of-fact could have found the witnesses credible and their testimony accurate enough to convict petitioner.  Petitioner has offered no new evidence to discredit any key witnesses; he merely challenges their credibility, a challenge that his counsel made countless times during trial.  Therefore, this Court cannot and will not now second-guess the jury's opinion of witness credibility, in the absence of new evidence. The claim is without merit and should be DISMISSED.

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DISMISSED and respondent's motion to dismiss be GRANTED.  Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.  <u>See</u> <u>Miller-El v. Cockrell</u>, 123 S.Ct. 1029, 1039 (2003).

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  See 28 U.S.C. § 636(b)(1)(C)(2000); FED.R.CIV.P. 72(b).  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
James E. Bradberry
United States Magistrate Judge

Norfolk, Virginia

    June 29    , 2007

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of

the following:

       Ruben E. Martinez, #317530, <u>pro</u> <u>se</u>
       B-4 - 213
       Wallens Ridge State Prison
       Big Stone Gap, VA  24219


       Karen Misbach, Esq.
       Assistant Attorney General of Virginia
       900 E. Main Street
       Richmond, VA  23219


                Fernando Galindo, Clerk


                By _____
                          Deputy Clerk

                _____, 2007